UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**MELANIE MARSH,**

    **Plaintiff,**

**v.**                                                               **Case No: 5:12-CV-346-Oc-18PRL**

**COMMISSIONER OF SOCIAL SECURITY**

    **Defendant.**

_____

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). The Court has reviewed the record, the memoranda, and the applicable law. For the reasons set forth herein, the Commissioner's decision should be **AFFIRMED** under sentence four of 42 U.S.C. §405(g).

### I. Procedural History and Summary of the ALJ's Decision

In November 2009, Plaintiff filed applications for DIB and SSI, alleging a disability onset date of June 11, 2008. (Tr. 117-23, 124-26). The Social Security Administration ("SSA") denied her applications initially and upon reconsideration. (Tr. 60-67). Plaintiff requested a hearing before an Administrative Law Judge (Tr. 88) and on February 7, 2011, ALJ Douglas A.

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within fourteen (14) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

Walker held a hearing. (Tr. 16-33). On March 2, 2011, ALJ Walker issued an unfavorable decision. (Tr. 39-49).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 11, 2008, the alleged onset date. (Tr. 41). At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease, of the cervical and lumbar spines; spina bifida; a ganglion cyst in the right hand; fibromyalgia; and, an atonic bladder. (Tr. 42).

At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 42). Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), with an additional limitation. The claimant can lift or carry 10 pounds occasionally, stand or walk for 2 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday, but only occasionally climb, balance, stoop, kneel, crouch, or crawl.

(Tr. 43).

At step four, the ALJ determined that Plaintiff was capable of performing past relevant work as a clerical worker (administrative) and a customer service worker (pet store). (Tr. 48). Thus, the ALJ found that Plaintiff was not disabled from June 11, 2008, through the date of the decision. (Tr. 48). The Appeals Council denied Plaintiff's Request for Review. (Tr. 1-5). After exhausting her administrative remedies, Plaintiff timely filed the instant appeal. (Doc. 1).

## II. Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not

less than twelve months. 42 U.S.C. §§416(i)(1), 423(d)(1)(A); 20 C.F.R. §404.1505(a). The Commissioner has established a five-step sequential analysis for evaluating a claim of disability. *See* 20 C.V.R. §404.1520. The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987)

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988)(citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995)(per curiam)(internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)

When the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)(per curiam.) "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560, *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992)(stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings.)

## II. Background

Plaintiff was thirty-two years old at the time of the hearing. (Tr. 19). Plaintiff was born with spina bifida and underwent corrective surgery at the age of one year. (Tr. 351). She has a Bachelor's degree and past work experience as a teacher, clerical worker, and customer service worker in a pet store. (Tr. 19, 20-21). Plaintiff stopped working as a reading teacher in June 2008 when her teaching contract was not renewed due to budget layoffs. (Tr. 20-22). Plaintiff alleges disability beginning on June 11, 2008 – the date she stopped teaching – due to spina bifida, fibromyalgia, atonic bladder, and depression. (Tr. 231).

Plaintiff testified that she has bladder urgency and has to go the restroom up to four times a night and every hour and a half to two hours during the day. (Tr. 25-26). She testified that she used to wear diapers until the age of 23 when she was prescribed Ditropan which helps. (Tr. 25). Plaintiff also testified that she has pain and stiffness extending from the center of her back to the tailbone, for which she uses salt baths, over the counter pain medication, icy hot patches, and heating pads. (Tr. 26-27). Plaintiff also reported pain in her hips, ankles, left knee, and hands. (Tr. 27). Plaintiff testified that her legs are different lengths and that affects her ability to stand and walk. (Tr. 27-28). Plaintiff estimated that she could walk about a half a block and stand for twenty to thirty minutes. (Tr. 28). Plaintiff also testified that she has trouble sitting due to her hips and back and can only lift five pounds. (Tr. 28-29). She can bend down and squat with pain. (Tr. 29).

## III. Analysis

### A.   *The ALJ's RFC Assessment is supported by substantial evidence*

According to Plaintiff, "[t]he main problem with the ALJ's [RFC] determination is that he has failed to consider and weigh all of the pertinent evidence in the case, particularly that of

Dr. Donald Tindall." (Doc. 17 at 9-10). Plaintiff focuses on the Medical Source Statement completed by Donald J. Tindall, M.D. on September 14, 2010 in which he opined *inter alia* that: Plaintiff could lift less than 10 pounds with her right hand, and 10 to 15 pounds with her left hand, and frequently lift or carry less than 10 pounds; stand "less than 2 hours in an 8-hour workday" and sit "less than about 6 hours in an 8-hour workday;" she was limited in her ability to push/pull in the upper and lower extremities, as well as reaching in all directions; she could never climb, balance, or crawl and only occasionally kneel and crouch; and her prognosis was poor and she would indefinitely experience these limitations and conditions. (Tr. 508-10).

As an initial matter, Dr. Tindall examined Plaintiff on two occasions for the purpose of producing an evaluation of Plaintiff's disability claim and did not otherwise have a treating relationship with her. (Tr. 351, 504). Accordingly, Dr. Tindall is not a treating physician (and Plaintiff does not disagree); thus, his opinions are not entitled to any special deference. *See* 20 C.F.R. §§404.1502, 404.1527, 416.902, 416.927; *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1160 (11th Cir. 2004). However, even if Dr. Tindall was a treating physician, the ALJ articulated good cause for discrediting his opinions.

The opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips* v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004). With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so. *Id*. at 1240-41.

The ALJ articulated three reasons for declining to accord Dr. Tindall's opinions controlling weight. First, he stated that opinions on the issues of whether a claimant is "disabled" or "unable to work" are reserved to the Commissioner. (Tr. 46). The undersigned agrees with Plaintiff that Dr. Tindall did not state that Plaintiff was disabled but, rather, opined regarding what activities she could perform with her medical condition. However, the ALJ also noted that Dr. Tindall's opinion was inconsistent with his own treatment notes and the record evidence as a whole. (46-47).

Indeed, Dr. Tindall's opinion of such severe limitations was not supported by the objective results of the examination he conducted the same day he completed the Medical Source Statement.. (Tr. 504-07). On examination, Dr. Tindall found that Plaintiff's grip strength in her right hand was 4/5 and that her grip strength in her left hand, as well as strength in her wrists, elbows, arm muscles, and shoulders was normal. (Tr. 505). In addition, Dr. Tindall noted that Plaintiff had only mild atrophy of the left leg and an unassisted left-lower extremity limp and that she was able to get out of a chair with a "small amount of difficulty" despite having muscles spasm and tenderness in her lumbosacral spine and left hip, tenderness of her feet and ankles, decreased sensations in her feet, 12 of 18 fibrocytic tender points, and decreased ranges of motion of her thoracolumbar spine, left hip, and ankles.

Dr. Tindall noted similar findings in his consultative examination on December 4, 2008. (Tr. 351-53). Plaintiff's grip strength and strength in her wrists, elbow flexors and extensors, and shoulder abductors were normal. Dr. Tindall again noted mild left leg atrophy and that Plaintiff walked with an unassisted left lower extremity limp. Dr. Tindall did not assess any restrictions or limitations.

The ALJ also discussed other record evidence that was inconsistent with Dr. Tindall's opinions. First, the ALJ noted that in October 2008 Steven Tang, M.D. found Plaintiff's gait/station, strength/muscle tone, and ranges of motions all within normal limits, despite her foot deformity, osteoarthritis, fibromyalgia, and spina bifida. (Tr. 44, 433). Likewise, the ALJ noted that in December 2008, Magaly Delgado, Psy.D., performed a consultative examination with mental status during which he observed no gait deficits, fine motor shakes, or tremors. (Tr. 44, 355-57). The ALJ also noted unremarkable x-rays of Plaintiff's right ankle in December 2007 and x-rays of Plaintiff's left ankle in February 2009 that revealed only mild soft tissue swelling and mild pes planus deformity of the hindfoot. (Tr. 44, 406, 408). He also noted that a CT scan of the cervical spine in March 2010 revealed some degenerative change at the C5-C6 level, but no fracture or dislocation. (Tr. 478) Dr. Tindall's opinions were also inconsistent with Mark A. Beckner, M.D.'s examination in March 2010. (Tr. 469-70). Dr. Beckner noted that Plaintiff stood and ambulated well; had good overall coordination; no true muscle spasms; no deficits in strength or sensation in upper extremities; good ranges of motion; and only mild tenderness over her cervical spine and right upper thoracic spine. Dr. Beckner also noted that Plaintiff had a history of surgically treated spina bifida, with only "minimal deficit." Finally, the ALJ correctly noted that the record was devoid of any evidence showing significant treatment, such as hospitalization, surgery, or emergency care, for Plaintiff's musculoskeletal or neurological systems since the alleged onset date of June 11, 2008. (Tr. 44).

Plaintiff also argues that the ALJ failed to properly weigh the opinions of Plaintiff's primary care physician, Dr. Tang. On August 19, 2010, Dr. Tang completed a "Bladder Questionnaire" in which he stated that Plaintiff's diagnosis of overactive bladder/atonic bladder resulted in urinary frequency every 1 ½ hours and 3-4 daily episodes of incontinence. (Tr. 496-

98). Dr. Tang opined that Plaintiff's prognosis was poor; that her symptoms were severe enough to interfere frequently with attention and concentration; that Plaintiff could sit for less than two hours in an eight hour day and stand/walk for less than two hours in an eight hour day; and that she would need unscheduled restroom breaks 4-5 times per day, and that each time she would be away from the work station about ten minutes.. (Tr. 496-98).

The ALJ declined to accord controlling weight to Dr. Tang's opinions because his treatment records do not show any treatment for Plaintiff's atonic bladder other than a prescription for Ditropan, which is also the only treatment identified by Dr. Tang in the Bladder Questionnaire. (Tr. 424-37, 499-503). The ALJ also noted that a CT in May 2009 showed no physical cause for Plaintiff's incontinence and Plaintiff testified at the hearing that Ditropan was effective enough that she no longer wore diapers. (Tr. 25, 453). The ALJ further noted that the evidence fails to show significant treatment, such as hospitalization, surgery, or emergency care for the claimant's atonic bladder since the alleged onset date. (Tr. 45). Accordingly, the ALJ articulated good cause for discounting Dr. Tang's opinion that Plaintiff suffers from incontinence with such frequency that she cannot perform even sedentary work.

Plaintiff also argues that the ALJ erred by stating only that he did not give the opinions of Dr. Tindall and Dr. Tang controlling weight without identifying what specific weight he accorded them. However, as discussed above, the ALJ clearly considered the pertinent medical opinions of both doctors and articulated specific reasons for discounting their opinion and those reasons were supported by substantial evidence.

   **B.** ***The ALJ's finding that Plaintiff was "not fully credible" is supported by substantial evidence.***

Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's credibility. The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to

cause the alleged symptoms, her statements "concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" with the evidence residual functional capacity assessment. (R. 45.)

If an ALJ decides not to credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Jones v. Department of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence). In the instant case, it appears as though the ALJ applied the Eleventh Circuit's pain standard "threshold" assessment to Plaintiff's subjective complaints. *See Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). The ALJ stated that he considered Plaintiff's subjective complaints in light of 20 C.F.R. §§ 404.1529 and 416.929. (R. 43). In applying the pain standard, the ALJ found that Plaintiff met the initial burden of showing underlying medical conditions that could be expected to give rise to symptoms. Once Plaintiff met this initial burden, however, the ALJ found Plaintiff's subjective complaints were not fully credible considering Plaintiff's own description of her activities and lifestyle as well as medical records that were inconsistent with complaints of disabling pain and incontinence. (R. 45-47).

The ALJ properly considered Plaintiff's household and social activities in evaluating claims of disabling pain. *See Dyer v. Barnhart*, 395 F.3d 1206, 1209-12 (11th Cir. 2005); *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (11th Cir. 1990). The ALJ found that Plaintiff's self-reported activities of daily living were "not limited to the extent that one would expect from an individual totally disabled by pain or incontinence." (Tr. 45). Specifically, the ALJ noted that Plaintiff and her mother reported in December 2009 that

Plaintiff was able to take care of her hygiene, cook, do light laundry, dust, sweep, vacuum, take care of pet birds and a dog, drive, shop, manage her money, read, watch television, work on puzzles, use a computer, and talk with friends by telephone or in person. (Tr. 250-54, 257-60). In December 2008, Dr. Tindall also noted that Plaintiff was independent for activities of daily living and that she could drive. (Tr. 352). Likewise, Dr. Delgado noted in December 2008 that Plaintiff could take care of her hygiene, breed rabbits, run errands, use a computer, and talk to her friends. (Tr. 356). In addition, Plaintiff testified that she could take care of her hygiene, wash the dishes, do housework, drive, and work on puzzles. (Tr. 29-30).

Contrary to Plaintiff's suggestion, the ALJ did not discredit Plaintiff's subjective complaints based solely upon her activities of daily living. Rather, the ALJ also noted that Plaintiff's testimony of disabling symptoms was inconsistent with the medical evidence, including Dr. Tang's findings in October 2008 that Plaintiff's gait, station, strength, muscle tone, and ranges of motion were all within normal limits; Dr. Tindall's findings in December 2008 and September 2010, that Plaintiff had only mild atrophy of the left leg, an unassisted left-lower-extremity limp, and normal (or almost normal) strength in her hands, wrists, elbows, arm muscles, and shoulders; and Dr. Beckner's findings in March 2010 that Plaintiff stood and ambulated well and had no deficits in strength or sensation in upper extremities. With respect to her allegedly disabling incontinence, Plaintiff was treated with Ditropan and she testified that it was effective enough that she no longer wore diapers. (Tr. 25-453). The ALJ pointed out that the record was devoid of any significant treatment (i.e., hospitalization, surgery, or emergency care) for Plaintiff's atonic bladder since the alleged onset date. (Tr. 45). The ALJ also noted that a CT in May 2009 showed no physical cause for Plaintiff's incontinence. (Tr. 45, 453).

- 11 -

Accordingly, the ALJ articulated explicit and adequate reasons, based on substantial evidence, for discrediting Plaintiff's subjective complaints. The ALJ considered the objective evidence, Plaintiff's testimony, and evidence of Plaintiff's daily activities in reaching the conclusion that Plaintiff's impairments were not as limiting as she claimed.

### IV. RECOMMENDATION

In view of the foregoing, it is respectfully recommended that the decision of the Commissioner be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

**DONE AND ENTERED** in Ocala, Florida, on August 6, 2013.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies to:

All Counsel